ELIZABETH R. McNEAL *vs.* DAVID F. SHERWOOD.

·PROVIDENCE—JULY 16, 1902.

PRESENT : Stiness, C. J., Douglas and Blodgett, JJ.

(1) *Wills. Inheritance by the Half Blood.*

In respect to inheritance, there is in this State no distinction left between the whole and the half blood. They are equally of the blood of the intestate.

(2) *Wills. Contingent Remainders. Rule in Shelly's Case.*

Testamentary devise as follows : One-fifth to A. during his natural life, with condition against alienation, remainder to B., C., D., and E., the children of A., or the survivors of them in equal proportions. One-fifth to B. for life, with same conditions, and at her death to the surviving brother and sisters in equal proportion. One-fifth each to C. & D. with same conditions, and with remainder to the surviving brother and sisters. One-fifth to E. with same conditions, and after his decease to his surviving sisters ; and in case none of his sisters survive him, to his legal heirs in equal proportions :—

*Held,* that E. took a life estate in one-fifth subject to a contingent remainder in fee to his sisters if they should survive him, with a contingent remainder in fee, if they did not take, to his heirs *eo nomine.*

*Held,* further, that, after the decease of his sisters, under the rule in Shelly's case, E. became owner in fee simple absolute, and had full power to devise his estate in like manner.

BILL IN EQUITY for specific performance. Heard on bill and answer.

DOUGLAS, J. This is a suit brought to enforce an agreement to purchase certain land in the city of Providence which

at one time was owned by Elizabeth McNeal, who died July 11, 1838.

(1)    The land in question was given by her will in fifths, as follows: One-fifth part to John McNeal, "only surviving son of my late husband," during his natural life, "on condition that he shall not alienate or sell his life in said estate," with remainder to Elizabeth McNeal, Mary Ann McNeal, Frances McNeal, and Henry McNeal, "or the survivors of them in equal proportions." One-fifth to Elizabeth, eldest daughter of said John, for life, with like condition against alienation, and at her death to her surviving brother and sisters in equal proportions. One-fifth each to Mary Ann and to Frances for life, with the same condition, and with remainder "to her surviving brother and sisters." One-fifth to Henry for life, with same condition, and after his decease "to his surviving sisters and in case none of his sisters survive him to his legal heirs, in equal proportions."

It is agreed that all the sisters died before Henry, intestate, and leaving no issue or husbands surviving them, and that whatever estate of inheritance came to Henry passed by his will to the complainant. There is no question that Henry was intended by the word "brother" in the will, and took by devise the portions of the fee given him by its terms on the successive deaths of the father and sisters. It appears, however, that he was a son of John, but not by the same mother with the sisters; hence the question arises whether as brother by the half blood, though descended from the same grandmother—the common source of descent for this estate—he inherited the portions of the fee which vested in the sisters respectively on the termination of the life estates of the father and of the two sisters who died before the last; and we are further asked to determine whether, under the last clause of the will, he took a devisable estate.

We think that both these questions must be answered in the affirmative. The first was so decided by Judge Story in *Gardner* v. *Collins*, 3 Mason, 398, in a charge to the jury, and the decision was repeated by the Supreme Court of the United States, in an exhaustive opinion in the same case in 2 Peters, 58.

In 4 Kent's Commentaries, 12th ed. 403 and 404, it is said that in Rhode Island, as in other States mentioned, there seems to be no essential distinction left between the whole and the half blood. They are equally of the blood of the intestate. We are not aware that these statements of our law have ever been doubted.

(2)     It appears also very plain that, under the fifth clause of the will, Henry McNeal took a life estate in one undivided fifth part of the land, subject to a contingent remainder in fee to his sisters if they should survive him, with a contingent remainder in fee, if they did not take, to his heirs *eo nomine.* So that after the death of all his sisters, while he was living, he had by the words of the will an estate for life, with remainder in fee to his heirs.

Under the rule in Shelly's case, he thereupon became owner in fee simple absolute, and had full power to devise his estate in like manner.

The case presented is the one stated in 2 Washb. on Real Prop. 6th ed. § 1609, where it is said : " The mere circumstance that the remainder was contingent does not prevent the operation of the rule the moment the remainder vests. Thus an estate limited to A. for life, and if A. survives B., then to his heirs, would be a contingent remainder in A., depending upon his surviving B. If he does, his estate becomes at once vested and his term for life merges in the inheritance."

No question arises as to his power to alienate during his lifetime, as he did not attempt to make any conveyance to take effect during his life.

We conclude, therefore, that a fee simple in the whole estate passed under Henry's will, and that the complainant can convey to the defendant good title to the land in question, and that the defendant is bound to fulfill his agreement to purchase the same.

*Cooke & Angell,* for complainant.
*Comstock & Gardner,* for respondent.